UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 2: 09-96-DCR |
| Plaintiff/Respondent, | ) | and |
| | ) | Civil Action No. 2: 13-7279-DCR |
| V. | ) | |
| | ) | |
| TYRONE TANKS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Tyrone Tanks' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No 154] Pursuant to local practice, the motion was referred to a United States Magistrate Judge for review and issuance of a Report and Recommendation. On November 21, 2013, United States Magistrate Judge Edward B. Atkins issues his Report and Recommendation, recommending that the relief request by Defendant Tanks be denied. [Record No. 163] Thereafter, Tanks filed objections to the Report and Recommendation. [Record No. 164] Having fully considered the record of this proceeding, the Court agrees with the Magistrate Judge's analysis. As a result, Tanks' motion will be denied.

**I.**

On August 6, 2009, Defendant Tyrone Tanks robbed Collett's Liquor Store. He used a handgun to commit the offense. Tanks also used his girlfriend, Stephanie Morales, as the get-away driver following the robbery. Both Tanks and Morales were caught and charged with

violating the Hobbs Act and with using a firearm during the commission of a crime of violence. [*See* Record No. 1; Indictment, Counts 1 and 2.] Tanks was also charged with possessing a firearm and ammunition after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). [*Id.*; Counts 3 and 5]

The indictment was returned by a federal grand jury on December 10, 2009.[1] On March 17, 2010, Morales moved the Court to be re-arraigned. [Record No. 27] A hearing on Morales motion was held on March 29, 2010. And as part of her agreement with the United States, Morales agreed to cooperate in connection with the prosecution Defendant Tanks.[2] In light of this cooperation, Tanks abandoned several pending pre-trial motions and also decided to enter a guilty plea to Counts 1 and 2 of the Indictment. [Record No. 41] In exchange, the United States agreed to dismiss the remaining charges. [Record Nos. 48, 49, and 76]

The terms of Tanks' Plea Agreement are relevant to the issues raised in his current motion. Paragraphs 6 and 7 of the document signed by the parties on April 12, 2010, specifically provide:

> 6. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guideline calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

---

[1] The statutory penalties for Count 1 provide for a term of imprisonment of not more than 20 years. The penalties for Count 2 include a term of imprisonment of not less that 7 years consecutive to any other term imposed.

[2] Counsel for the co-defendant explained during her sentencing hearing that Tanks and certain family members contacted Morales after the two defendants were arrested and "tried to exert influence over the whole situation, all to get Stephanie to do what he [*i.e.*, Tanks] wanted her to do." [Record No. 86, p. 12] The sealed portion of Morales' sentencing transcript indicates that Tanks' "constant communication" with Morales prior to the entry of her guilty plea led to a delay in resolving the case. [Record No. 87, pp. 4-5]

> (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2009, manual, will determine the Defendant's guideline range.
>
> (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts outlined in paragraph 4.
>
> (c) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level for Count 1 is 20.
>
> (d) Pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence for Count 2 is the minimum term of imprisonment required by statute.
>
> (e) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.
>
>       ** ** **
>
> 7. The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence subject to the following exceptions: 1) the Defendant does not waive his right to appeal any objection(s) he makes to the Sentencing Guideline calculated by the United States Probation Office that is overruled by the Court as to Count I, and 2) the Defendant does not waive his right [to] appeal any sentence on Count II that exceeds 7 years imprisonment.

[Record No. 49]

During the change-of-plea hearing held on April 12, 2010, Defendant Tanks acknowledged under oath that the terms of the Plea Agreement were not binding on the Court. [Record No. 76] Further, Tanks confirmed that there were no other promises, except those contained in the Plea Agreement. [*Id*., pp. 11, 13-15] Contrary to his present claims, the plea colloquy also refutes Tanks' argument that, prior to his sentencing hearing, the defendant was unaware of the explicit provisions of the Plea Agreement.

### A. The July 26, 2010, Sentencing Hearing

At the outset of the original sentencing hearing held on July 26, 2010, the Court reviewed the relevant guideline calculations and confirmed that there were no objections that affected guideline range of imprisonment. [Record No. 77, p. 3][3] The parties then addressed the United States' motion for a reduction to the defendant's guideline range pursuant to U.S.S.G. § 5K1.1. [Record No. 78] Based on Defendant Tanks' cooperation in connection with a homicide investigation in Hamilton County, Ohio, the United States made the following recommendation:

> [MS. LEONHARD] Detective Grant advised me last week via telephone that he did think that Mr. Tanks' information that he provided was of assistance and it did lead, like I said, to an indictment . . . . So for that reason we believe that the defendant is entitled and has earned a motion under 5K1.1.
>
> We're only making the motion under the guidelines, not 18 United States Code, Section 3553(e). And our recommendation, the United States' ultimate sentencing recommendation, is for a sentence of 36 months on Count One followed by a term of imprisonment of nine years on Count Two. So our recommendation would be a 30 percent reduction off of 144 months, and I think that would bring the Court down to – or bring the sentence down to 84 months. So it's a 30 percent reduction but off the high end of the guidelines on Count One and two years more than the statutory mandatory minimum on Count Two.

[Id., p. 2]

Before proceeding further, and to clarify any confusion, the Court corrected the United States error regarding the mandatory minimum term of incarceration required for Count 2 and its ultimate recommendation for a total term of incarceration of nine years (108 months) based on the defendant's cooperation.

---

[3] The defendant filed three objections that did not affect the guideline calculations. Those objections are discussed at page 15 of the transcript of the sentencing hearing. [Record No. 77] These objections related to the defendant's age, medical issues, and a request regarding his release status.

THE COURT: . . . All right. I'm going to ask you to go over your recommendation again. The guidelines for Count One in the case are 30 to 37 months. The mandatory minimum under Count Two is 84 months. And the United States is not seeking a reduction from the mandatory minimum –

MS. LEONHARD: We are not.

THE COURT: – under 3553(e)?

You indicated that you would be moving for a 30 percent reduction, which would be taken from the – from Count One.

MS. LEONHARD: I misspoke. The United States' recommendation would be 36 months on Count One and 108 months on Count Two, for a total term of 144 months. Our reduction is – we're asking for a reduction of 30 percent off of that number, 144 months, which would be 36 months. I completely misspoke, Your Honor, not that I looked at it. My math – it would take – if the Court were to grant the United States' request for a third off of 144, that would be 36 months, that would take us back down to 108 months, which is nine years, not seven.[4]

THE COURT: But effectively the Court would be taking the reduction from Count One. I understand what your theory is in terms of the amount of time that you're seeking to have reduced, but unless the United States – you know, the Court could go down to 84 months on Count Two, but it would have to be consecutive, so the Court couldn't go below 84 months on Count Two. So the remainder –

MS. LEONHARD: So I guess then we would be asking for 24 months on Count One followed by 84 months consecutive on Count Two.

THE COURT: Yes, ma'am.

MS. LEONARD: Thank you.

THE COURT: That's effectively how the calculations would work out. It does make a difference, inasmuch as the term on Count Two has to be consecutive to

---

[4] A thirty-six month reduction from the initial recommendation of 144 months would constitute a 25% reduction. Although the AUSA also referred to a 30% reduction at one point during the hearing, thirty-six months is approximately 33.33% of the ultimate sentence of 108 months recommended by the United States. Regardless of the percentages, two points were clear: (1) the AUSA was not recommending a total term of incarceration less than 108 months; and (2) the Court was not bound by either parties' recommendation.

> Count One, and inasmuch as the United States is not moving under 3553(e), the Court could take a portion of the reduction off each count but couldn't go below 84 months on Count Two, and so the sentence would actually have to reflect that.
>
> MS. LEONHARD: That is correct. And as I explained to – I neglected to mention this before, but as I explained to Mr. Fessler, the reasoning behind the United States not making a motion under 3553(e) is to account for the defendant's role in this particular offense as the gunman in this particular robbery.

[*Id.*, p. 3-4]

Following this discussion which was held in the defendant's presence, the Court recessed the proceedings to allow Tanks' attorney to discuss and further explain the United States position. It is clear from this discussion that the United States position regarding its recommendation for a total sentence of 108 months incarceration was only explained immediately prior to the sentencing hearing.

> THE COURT: Mr. Fessler, I'm not sure that that's completely clear to Mr. Tanks, but if you need a little more time to explain that whole scenario to him, you can certainly take it.
>
> MR. FESSLER: And I would ask for a little bit more explanation myself, because when the argument was first made before Ms. Leonhard made her adjustments, I believe the statement was made that the felt it was an appropriate sentence based on his role to take it down to 84 months and now we're saying 108. I'm a little bit – I'm kind of lost.
>
> THE COURT: On Count Two. I would take it down to 84 months on Count Two, but there would still be Count One to deal with, and the United States has recommended agreeing to reduce Count One down to 24 months, for a total effective sentence of 108 months, but 84 would have to be consecutive inasmuch as there's no 3553(e) motion.
>
> MS. LEONHARD: And I apologize, Your Honor, I gave Mr. Fessler the same bad information that I just gave the [Court] before I came in. My math was wrong.

[*Id.*, p. 5]

In addition to filing a sentencing memorandum addressing a number of relevant sentencing factors under 18 U.S.C. § 3553 [Record No. 53], during allocution, Tanks' attorney argued for a sentence which included a total term of incarceration of 84 months which would have been twelve months greater than the co-defendant's sentence, but which would also take into account his claimed substantial assistance to authorities. [Record No. 77, p. 16] In rejecting this argument, the Court explained that it rested upon faulty logic.

> THE COURT: Well, but I think the problem with that argument is it contains a faulty premise in terms of the starting point.
>
> MR. FESSLER: I understand.
>
> THE COURT: Two faulty premises actually. One, that the United States' starting point is 144 months as opposed to 114 months. The second is that the Court would essentially adopt the United States' position that that should be the sentence in the case, because the co-defendant in the case did receive a 72-month sentence but received a reduction, a 5K reduction. And the co-defendant in the case really was assessed the gun charge but didn't really have any involvement with the gun, she didn't possess the gun, didn't know the gun was in the glove box. But it was brandished, and, of course, as a co-defendant in the case with knowledge of it, then, of course, that was attributed to her as well.
>
> The co-defendant in this case received quite a bit of time for action on Mr. Tanks' behalf. He's responsible for the young lady who did have some criminal history, but a young lady receiving a 72-month prison sentence.

[*Id.*, p. 17]

Notwithstanding the rejection of counsel's argument, he continued to argue that a sentence of 84 months on Count Two and one day of imprisonment on Count One would be sufficient under 18 U.S.C. § 3553. [*Id.*, p. 18] However, focusing on the: (i) non-binding nature of the Plea Agreement; (ii) seriousness of the offense; (iii) fact that the defendant committed the offense shortly after being released from an earlier term of incarceration and while he was still

subject to a term of supervised release; (iv) defendant's actions in involving the co-defendant in the offense; (v) need to provide sufficient deterrence; and (vi) need to protect the public, the Court again found Tanks' arguments to be unavailing. [*Id.*, pp. 21-23] Regarding the total term of incarceration to be imposed, the Court explained:

> [THE COURT:] In terms of the reductions that have been discussed, I do believe that in the final analysis the Court can agree to the numbers that have been recommended by the United States but does so reluctantly. It is a substantial reduction. I realize that this defendant, of course, has assisted the United States in other matters. I will note for the record going forward that the Court will impose a consecutive sentence under Count Two, which would be the mandatory minimum term of 84 months, and will run the term of imprisonment for the supervised release violation consecutive as well[5]. . . . The Court believes that all of the factors of 3553 have been considered and the Court believes that a total term of incarceration of 108 months for both Counts One and Two would be sufficient under the analysis of 3553(a).
>
> I will note for the record going forward if there were to be any further motions filed, the Court will have to consider those based upon the information provided to the Court at that time.

[*Id.*, p. 23-24] Thus, based on the defendant's cooperation provided in connection with a criminal proceeding in Hamilton County, Ohio, Tanks received a total reduction of 36 months from the sentence that would have been recommended *but for* his cooperation. And the sentencing transcript clearly reflects that the Court was reluctant to award the reduction recommended by the government. Following the sentencing hearing, Tanks filed a Notice of

---

[5] Tanks was sentenced to a consecutive term of imprisonment of 34 months for his supervised release violation.

Appeal, seeking to challenge the sentence imposed by the Court. [Record No. 65][6] Tanks' appeal constituted a breach of the Plea Agreement with the government.

### B. The United States' Rule 35 Motion

Following the July 26, 2010, sentencing hearing, the United States moved the Court on June 16, 2011, to consider a further reduction to the original term of incarceration imposed. [Record No. 94] Shortly thereafter, Tanks' voluntarily dismissed his appeal regarding the original sentence. [Record No. 111] The government's motion was based on the assistance Tanks provided regarding a second criminal case pending in Hamilton County, Ohio.

According to information contained in the motion, Tanks was interviewed in that matter on April 6, 2011, following the prosecutor's receipt of a letter from the defendant dated March 28, 2011. Tanks subsequently testified at the state trial in May 2011. [Record No. 94] The accompanying letter submitted by the Assistant United States Attorney ("AUSA") outlines the circumstances leading to – as well as the nature of – the additional cooperation provided by the defendant.

> The purpose of this letter is to advise you of the substantial assistance federal inmate Tyrone Tanks rendered in the prosecution of a case in Hamilton County, Ohio. Tanks was originally brought to Hamilton County by Assistant Prosecutor Anne Flanagan on a writ to testify for her in a murder case. Once he was housed in the Hamilton County Justice Center, an inmate in his pod provided him with information related to his robbery of casino patrons. Tanks contacted me by letter and let me know what this inmate . . . had said.

---

[6] On July 30, 2010, Tanks filed a *pro se* pleading captioned, "Motion to Vacate Plea and Sentence" in which he argued that AUSA Leonhard had agreed to file a motion under 18 U.S.C. § 3553(e) to allow the Court to sentence the defendant below the mandatory minimum seven-year term of incarceration required for Count Two. [Record No. 63] The motion was denied on the same date. [Record No. 64]

> Thereafter, Tanks met with investigators in the case and provided recorded statements as to the conversations . . . He testified truthfully and completely in a trial . . . and was able to corroborate much of the evidence presented against these two dangerous criminals. The State's case was strengthened by his cooperation.

[Record No. 94-2]

Tanks filed a separate motion seeking a sentencing reduction pursuant to Rule 35. [Record No. 98] However, that motion was denied. [Record No. 97] As the Court noted in its Order, "Rule 35(b) permits reduction of a sentence only upon motion by the government . . ." [*Id.*] Although denied by the Court, Tanks argued in his Rule 35 motion that his original sentence of 84 months on Count Two should have been further reduced under 18 U.S.C. § 3553(e) based on claimed "verbal discussions" involving his original attorney and the AUSA. A review of the documents attached to the defendant's motions do not reflect that any promises were made to Tanks or his attorney that the AUSA would recommend a sentence below 84 months for his conviction under Count Two. Further, as outlined above, Tanks confirmed during his change of plea hearing that no promises had been made to induce his guilty plea other than those contained in his written Plea Agreement.[7]

The memorandum filed by Tanks in support of the United States' Rule 35 motion relied upon the assistance the defendant provided in connection the second criminal matter in Hamilton County, Ohio. Additionally, Tanks' appointed counsel argued that the Court should also

---

[7] As the Supreme Court has held, "solemn declarations in open court carry a strong presumption of verity, and the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). As outlined above, the Defendant in this case fully understood all relevant parts of his written Plea Agreement. He further confirmed under oath that no promises were made to induce his guilty plea, other that what was outlined in the Plea Agreement.

consider the additional assistance he provide after his sentencing hearing in connection with the first Hamilton County matter. [Record No. 115, pp. 1-5] Tanks' attorney argued that the defendant should receive a 75% reduction from his original sentence of 108 months incarceration. While the Court disagreed with Tanks' assessment of the value of the cooperation he provided in the two state matters, the defendant's sentence was further reduced by a total of 18 months. [Record No. 118] Thus, following this proceeding, Tanks' original sentence had been reduced by a minimum of four and one-half years for cooperation with state prosecutors in two unrelated matters. Having fully credited the nature and extent of Tanks' cooperation in these matters, it was of no consequence that the state prosecutors did not appear at the Rule 35 hearing.

### C. Tanks' Appeal to the Sixth Circuit

Dissatisfied with the extent of his sentence reduction, Tanks appealed the Court's Rule 35 determination to the United States Court of Appeals for the Sixth Circuit. [Record Nos. 121 and 127] On appeal, the defendant argued, *inter alia*, that: (i) his sentence was substantively unreasonable because this Court failed to consider several mitigating factors; (ii) the government breached the plea agreement by arguing for a sentence greater than seven during his original sentencing hearing; (iii) the government breached the plea agreement by failing to request at the Rule 35 hearing an additional departure based on Tanks' additional assistance provided to Hamilton County prosecutors. The Sixth Circuit considered, but rejected, these arguments, finding that the waiver provision of the Plea Agreement was valid and enforceable. [Record No.

153] Following the dismissal of his appeal, Tanks filed the present § 2255 motion. [Record No. 154]

**II.**

United States Magistrate Judge Edward B. Atkins filed his Report and Recommendation on November 21, 2013. In relevant part, Magistrate Judge Atkins recommended that this Court deny the relief sought by Tanks through his § 2255 motion. As outlined in the Magistrate Judge's Report and Recommendation, Tanks raised ten issues in his motion. [Record No. 163] For purposes of analysis, the Magistrate Judge grouped these arguments into the following three categories:

1. Tanks' claim that his due process rights were violated during the Rule 35 hearing: (i) by allegedly being unable to offer proof of the AUSA's unconstitutional motives in refusing to request a further reduction of his sentence; (ii) because the Court denied his request to subpoena the prosecutor to testify; and (iii) because the Court did not provide full *Bostic* rights to present additional evidence further supporting a sentence reduction.

2. Tanks' claim that his due process rights were violated during his original sentencing hearing: (i) because the Court allegedly considered incorrect sentencing factors in imposing the sentence; and (ii) because the government breached the Plea Agreement by advocating for a higher sentence than agreed upon during plea negotiations.

3. Tanks' claim of ineffective assistance of counsel based on the claim that his attorney: (i) failed to properly inform him of the contents of the Plea Agreement prior to

the sentencing hearing; and (ii) failed to object to the AUSA's sentencing recommendation during the sentencing hearing.

[*Id.*, pp. 4-5]

The United States Magistrate Judge concluded that Tanks' due process arguments were not raised on direct appeal and, therefore, procedurally defaulted. [*Id.*, pp. 6-8] However, he also proceeded to review these arguments but found them to be without merit. This Court agrees with his analysis. Even now, Tanks has not offered any support for the claim that the AUSA did not recommend a further reduction to the sentence imposed for Count Two due to unconstitutional motives. Further, Tanks did not suffer any prejudice by not being allowed to subpoena witnesses to the Rule 35 hearing. The letter offered by the witness he would have called during the hearing was fully credited by the Court.

As noted in the Magistrate Judge's Report and Recommendation, "a Rule 35(b) hearing does not have the same constitutional mandates as a sentencing hearing." And in addressing whether a defendant has rendered assistance which would be sufficient for a reduction to the term of incarceration previously imposed, the Court is given a great deal of discretion in the manner in which any hearing will be conducted. *United States v. Grant*, 636 F.3d 803, 816 (6th Cir. 2011); *see also Dillon v. United States*, 560 U.S. 817 (2010) (the holding in *United States v. Booker*, 543 U.S. 220 (2005), does not apply to motions to reduce sentences under 18 U.S.C. § 3582(c)(2)). As noted above, the hearing conducted in this matter allowed the Court to determine that a further reduction was appropriate. The defendant would not have received a

more favorable outcome if witnesses had been subpoenaed. Here, the Court credited the statements contained in their correspondence which was favorable to Tanks.[8]

Next, Tanks' arguments that his due process rights were violated during the sentencing hearing are foreclosed because, as discussed above, these arguments were previously litigated before the Sixth Circuit. There has been no intervening change in the law which would allow these arguments to be renewed at this time. Finally, as noted in the Magistrate Judge's Report and Recommendation, Tanks did not receive ineffective assistance of counsel at any point during these proceedings.

Claims of ineffective assistance of counsel are evaluated using the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the defendant must first establish "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. When evaluating an ineffectiveness claim, the Court "must indulge a strong presumption" that counsel rendered effective assistance. *Id.* at 689.

The second prong of the *Strickland* inquiry is whether the defendant was prejudiced by his attorney's deficient performance. *Id.* at 687. To satisfy the prejudice requirement, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If either part of the

---

[8] As outlined at pages 10-11 of his Report and Recommendation, the Magistrate Judge also correctly rejected Tanks' argument that his due process rights were violated because he was unable to present other mitigating evidence in support of the government's Rule 35 motion. Tanks' post-sentencing rehabilitative conduct would not have resulted in any further reduction of his sentence.

*Strickland* test is not met, the Court's inquiry ends.[9] *Id.* at 697. Here, the Magistrate Judge correctly determined that Tanks' ineffective-assistance claims fail under *Strickland*.

Tanks was given ample time to discuss the United States recommendation regarding his original sentence. Further, notwithstanding the government's recommendation, his attorney argued forcefully for an greater reduction. But in the final analysis, the parties' recommendations and requests were just that: *non-binding* recommendations and requests. Tanks knowingly and voluntarily agreed to the terms outlined in his written Plea Agreement and the terms were not breached by the AUSA. And the Court imposed what it believed was the minimum term of incarceration taking into account all relevant factors of 18 U.S.C. § 3553 as well as Tanks' cooperation in the investigation and prosecution of others.

### III.

On December 5, 2013, Tanks filed objections to Magistrate Judge Atkins' Report and Recommendation. [Record No. 164] The Court reviews *de novo* those portions of the Report and Recommendation to which Tanks objects. *See* 28 U.S.C. § 636(b)(1)(C). Here, the defendant essentially repeats several of his original arguments as objections to the Magistrate Judge's Report and Recommendation but does not provide any additional support for his position. [Record No. 164]

Out of an abundance of caution, and as set out above, the Court has undertaken a *de novo* review of all issues raised in Tanks' motion. However, notwithstanding Tanks' continuing assertions, the United States did not breach any part of the parties' written Plea Agreement by

---

[9] The Supreme Court has instructed that "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

indicating that, if warranted, the government could later file a motion to reduce his sentence under Rule 35 of the Federal Rules of Civil Procedure. Further, the defendant is incorrect in his assumption that the Court was required to afford him a hearing on the government's subsequently-filed Rule 35 motion. Likewise, it is clear that, regardless of any motion filed, the final determination regarding whether a sentence reduction was appropriate was for the Court to make. Tanks' arguments do not transform the parties' non-binding Plea Agreement into one that required the Court to agree with their suggestion regarding an appropriate term of incarceration.

## IV.

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). When a district court's denial is based on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And when the district court's denial is based on a procedural ruling, the petitioner must demonstrate that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurist of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

Tanks cannot meet this burden. Under the facts presented, a reasonable jurist would not find the denial of the defendant's motion procedurally incorrect. Likewise, reasonable jurists would not find it debatable whether the defendant's motion states a valid claim of the

denial of a constitutional right. Further, given that the motion, files, and records of the case conclusively show that Tanks is not entitled to the relief requested, there is no need for an evidentiary hearing.[10]

**V.**

Defendant Tanks is not entitled to relief under 28 U.S.C. § 2255. Likewise, he is not entitled to issuance of a Certificate of Appealability on any issue. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Tanks' motion to vacate, set aside, or correct his sentence [Record No. 154] is **DENIED** and his claims are **DISMISSED** with prejudice;

2. The Report and Recommendation of United States Magistrate Judge Edward B. Atkins [Record No. 163] is **ADOPTED** and **INCORPORATED** herein by reference.

3. Defendant Tanks' objections to the Report and Recommendation of the United States Magistrate Judge [Record No. 164] are **OVERRULED**.

4. A Certificate of Appealability shall not issue;

5. Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the United States.

This 6th day of January, 2014.



---

[10] There is no support for Tanks' argument that the Magistrate Judge's Report and Recommendation was "prematurely decided." [Record No. 164]